**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KARL VOGT,**

       **Plaintiff,**

                               **Case No. 2:19-cv-01597**
     **vs.**                           **Judge James L. Graham**
                               **Chief Magistrate Judge Elizabeth P. Deavers**

**JOSEPH MURPHY,** *et al.*,

       **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of the Motion to Dismiss filed by

Defendants Joseph Murphy, Nurse Young, Nurse Tim Cowgill, and Correctional Officer Lawson

(ECF No. 13), Plaintiff's Response in Opposition (ECF No. 14), and Defendants' Reply (ECF

No. 15). For the reasons that follow, it is **RECOMMENDED** that Defendants' Motion to

Dismiss (ECF No. 13) be **GRANTED**.

## I.

Plaintiff Karl Vogt, a prison inmate under the custody and control of the Ohio

Department of Rehabilitation and Correction ("ODRC"), brings his claims pursuant to 42 U.S.C.

§ 1983 alleging that Defendants were deliberately indifferent to his serious medical needs. (ECF

No. 9.) Plaintiff sues Defendants in both their individual and official capacities and seeks both

monetary and injunctive relief. (*Id.*)

Plaintiff alleges that on July 5, 2018, he was given a fast-acting insulin injection at

approximately 5:15 P.M. (*Id.* at 3.) According to Plaintiff, diabetic inmates are usually taken to

the cafeteria to eat immediately after receiving their insulin and, to get to the cafeteria, they walk

through the prison yard.  (*Id.*)  On this day, the yard was closed due to inclement weather, so the diabetic inmates (including Plaintiff) were not able to go to the cafeteria immediately following their insulin injections.  (*Id.*)

Plaintiff asserts that, within a half hour of receiving his insulin, he began experiencing shakiness, nervousness, and irritability.  (*Id.*)  He also reports sweating, getting the chills, getting lightheaded, and feeling dizzy.  (*Id.* at 3–4.)  According to Plaintiff, these symptoms lasted for around an hour at which point Plaintiff asked about getting some food delivered.  (*Id.* at 4.)  Plaintiff alleges that Defendant Young responded in an "uncaring and rude" manner.  (*Id.*)  At some point thereafter, one of the Defendants administered a blood glucose check on Plaintiff and his blood sugar was 40 mg per decaliter.  (*Id.*)  Plaintiff alleges that the blood sugar threshold for requiring immediate treatment is 54 mg per decaliter.  (*Id.*)  At this time, Plaintiff was given some graham crackers.  (*Id.*)  At around 6:30 P.M., a staff member brought meals and snacks to all of the diabetic inmates. (*Id.*)  Plaintiff alleges that, throughout this ordeal, none of the Defendants acted with concern for the health of Plaintiff and that Defendants were deliberately indifferent to his pain and suffering.  (*Id.*)

Plaintiff filed an informal complaint on July 12, 2018.  (*Id.*)  Defendant Murphy responded to the complaint, finding no evidence of deliberate indifference or cruel and unusual punishment.  (*Id.*)  Plaintiff escalated his complaint on July 17, 2018, to a grievance, which was denied on July 30, 2018.  (*Id.* at 4–5.)  The institutional inspector denied this grievance, finding that proper protocol was followed.  (*Id.* at 5.)  Plaintiff then escalated his grievance to the chief inspector, who acknowledged a need for improvement with the processes.  (*Id.*)  Plaintiff asserts that on January 10, 2019, a new policy was implemented at the jail for responding to diabetic inmates whose blood glucose readings were irregular. (*Id.* at 6.)

Defendants admit that on July 5, 2018, the prison yard was closed due to inclement weather, so the diabetic inmates who had just received insulin had to stay at the medical facility following their injections.  (ECF No. 13 at 2.)  Defendants maintain that there was a plan in place for treatment in the event one of the inmates experienced irregular blood glucose levels.  (*Id.* at 3.)  Defendants assert that this plan was followed as to Plaintiff, which is why he was given graham crackers when his blood glucose dropped and why all inmates were provided a meal and additional snacks at around 6:30 P.M.  (*Id.*)

## II.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd., P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc.*, 491 F. App'x. 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III.

Plaintiff brings his claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985). As a general rule, a plaintiff proceeding under § 1983 must allege that the deprivation of her rights was intentional or at least the result of gross negligence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Mere negligence is not actionable under § 1983. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

## A. Official Capacity Claims

"'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71(1989)). The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "It is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, No. 10-2185, 2013 WL 3455488, at *3 (6th Cir. July 10, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages.

*Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Thus, dismissal of Plaintiff's official

capacity claims for money damages against each Defendant is appropriate. *See Stayner v. Ohio*

*Dep't of Rehab. & Corr.*, No. 2:09-CV-752, 2010 WL 2620586, at *5 (S.D. Ohio June 25, 2010)

(dismissing official capacity claims for money damages, but allowing claims for injunctive relief

to continue).

Plaintiff also seeks prospective injunctive relief against Defendants in their official

capacity. (ECF No. 8 at 7.) Specifically, Plaintiff seeks an "injunction ordering Defendants to

be properly trained and prepared for similar situations in the future." (*Id.*) Under the doctrine of

*Ex Parte Young*, 209 U.S. 123, 159–60 (1908), Eleventh Amendment immunity does not bar a

plaintiff from pursuing injunctive relief claims through an official capacity suit against a state

official. *See Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (noting

that the exception set forth in *Ex parte Young* allows for "actions against state officials sued in

their official capacity for prospective injunctive or declaratory relief"). However, in order to

succeed on an official capacity claim for injunctive relief, Plaintiff must allege that the State was

responsible for a violation of his constitutional rights due to a custom or policy. *Monell v. Dep't*

*of Soc. Servs.*, 436 U.S. 658, 691 (1978). If a complaint against a state official is "based entirely

on past acts and not continuing conduct that, if stopped, would provide a remedy to them, . . . it .

. . does not come under the doctrine of *Ex parte Young*." *Gean v. Hattaway*, 330 F.3d 758, 776

(6th Cir. 2003) (dismissing plaintiffs' claim for injunctive relief from state officials after

determining their complaint was based entirely on past acts).

Here, Plaintiff has failed to identify any policy or custom on the part of the State that

resulted in a deprivation of his constitutional rights. Instead, his Complaint is entirely based on

alleged misconduct and alleged misapplication of policy on the part of Defendants that occurred

in this past.  He in fact admits that the institution has implemented a new policy.  (ECF No. 8 at

6.)  Accordingly, Plaintiff is not entitled to injunctive relief for any claims brought against

Defendants in their official capacities.

### B.  <u>Individual Capacity Claims</u>

It is well established that "[t]he Eighth Amendment forbids prison officials from

unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference

toward [his or her] serious medical needs."  *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th

Cir. 2010) (internal quotations and citations omitted).  A claim for deliberate indifference "has

both objective and subjective components."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir.

2011).  The United States Court of Appeals for the Sixth Circuit has explained the contours of

the claim:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004).]  The subjective component regards prison officials' state of mind.  *Id.*  Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011).  Where the risk of serious harm is

obvious, it can be inferred that the defendants had knowledge of the risk.  *Farmer v. Brennan*,

511 U.S. 825, 842 (1994).  The Sixth Circuit has also noted that in the context of deliberate

indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.  Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments.  However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted).  Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component."  *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010).  Rather, the Sixth Circuit considers the subjective component to be satisfied where defendants recklessly disregard a substantial risk to a plaintiff's health.  *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012).  Furthermore, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim."  *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

### 1.  Objective Component

Plaintiff must satisfy both the objective and subjective components to adequately state a claim for deliberate indifference.  As explained above, the objective component mandates that a plaintiff demonstrate a "sufficiently serious" medical need, "which is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (internal citations omitted).

Here, Plaintiff meets the objective component of a deliberate indifference claim.  Accepting Plaintiff's allegations as true with regards to his diabetes, the Undersigned concludes, under the limited circumstances of this particular case, that Plaintiff meet the requirements of a sufficiently serious medical condition.  *See, e.g., Garretson v. City of Madison Heights,* 407 F.3d 789, 797 (6th Cir. 2005) (finding diabetes that "required insulin injections at regular intervals" a serious medical condition).

## 2. Subjective Component

In order to demonstrate a deliberate indifference claim, Plaintiff must also allege that each Defendant subjectively perceived a substantial risk of serious harm and disregarded that known risk in his treatment. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896 (6th Cir. 2004)

### a. Defendant Joseph Murphy

Plaintiff identifies Defendant Joseph Murphy as the Health Care Administrator of Belmont Correctional Institution. (ECF No. 8 at 2.) In this role, Plaintiff alleges that Defendant Murphy is "legally responsible for the operation of the [prison's] Health Services . . . and for the health and welfare of all the inmates . . . ." (*Id.*) He alleges that Defendant Murphy acted with deliberate indifference to Plaintiff's serious medical needs when he denied Plaintiff's initial complaint and failed to provide training to the nursing staff. (ECF No. 8 at 4; ECF No. 14 at 4.)

Even accepting as true as Plaintiff has alleged, his Complaint does not contain any factual allegations that, if proved, would show Defendant Murphy's personal involvement in the alleged misconduct. At most, Plaintiff's Complaint appears to imply that Defendant Murphy is liable under § 1983 because of his supervisory position. Under § 1983, however, supervisory liability is unavailable as a Defendant must play more than a passive role in the alleged violation or show mere tacit approval of the actions in question. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *see Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (finding that individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants"). Plaintiff's Complaint, therefore, does not allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," even assuming all of his factual allegations are true. *Iqbal*, 556 U.S. at 678. Accordingly, the Undersigned finds that Plaintiff fails to state a claim for which relief can be granted against Defendant Murphy in his individual capacity.

### b. Defendant Correctional Officer Lawson

As to Defendant Correctional Officer Lawson, the Complaint likewise does not contain any factual allegation that, if proved, would show this Defendant's personal involvement in the alleged misconduct. *See Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) ("[A] complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." (internal citation omitted). Defendant Lawson's name does not appear in the factual allegations of the Complaint and appears only once in Plaintiff's Response in Opposition to Defendants' Motion to Dismiss. (*See* ECF No. 14 at 4 ("Defendants Young, Lawson, and Cowgill failed to follow protocol procedures.") Moreover, Plaintiff does not identify what unconstitutional action he believes Defendant Lawson took against him. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff's pleading, therefore, does not allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Accordingly, the Undersigned finds that Plaintiff fails to state a claim against Defendant Correctional Officer Lawson in his individual capacity.

### c. Defendants Nurse Young and Nurse Tim Cowgill

As to the two remaining Defendants, Plaintiff's Complaint alleges generally that "[n]one of the Defendants acted with concern of the danger imposed on the Plaintiff." (ECF No. 8 at 4.) Specific to Defendant Nurse Young, Plaintiff alleges in the Complaint that this nurse made an "uncaring and rude" comment when he asked for a meal. (*Id.* at 4.) Plaintiff goes on to complain that "[n]either nurse Defendant (Young and/or Cowgill) provided any of the recommended sources of carbohydrates within the time frame." (*Id.* at 5.) In his Response in Opposition, Plaintiff asserts that "Defendants Young, Lawson, and Cowgill failed to follow protocol procedures" and that "[t]he staff who gave the shots were well aware of the time

sensitive nature of insulin and its effects on the body." (ECF No. 14 at 4.) Neither Plaintiff's

Complaint nor his Response in Opposition contain additional factual allegations as to how these

Defendants were deliberately indifferent to his serious medical needs.

In reviewing Plaintiff's allegations, the Court cannot conclude that Plaintiff has

sufficiently alleged that these Defendants were aware of and disregarded the risk that Plaintiff

would suffer serious harm. Taking the facts in Plaintiff's Complaint as true, it appears to allege

that these nurses should have provided Plaintiff with a meal or a snack sooner than they did.

(*See* ECF No. 8 at 4.) Plaintiff alleges that, after administering a check on him and seeing that

his blood glucose level had dropped, he was given graham crackers and later given a meal. (*Id.*)

He alleges this course of action did not align with protocol and that he experienced pain and

suffering as a result of the delay in receiving food. (*Id.* at 4–5.)

To the extent Defendants Nurse Young or Nurse Cowgill failed to follow the specific

protocol in place, their actions do not rise to the level of a constitutional violation. Incompetence

or negligence, even if it results in significant harm, does not violate the Eighth Amendment. *See*

*Phaneuf v. Collins*, 509 F. A'ppx 427, 431 (6th Cir. 2012) (citing *Wilson v. Seiter*, 501 U.S. 294,

296 (1991)) (no violation of the Eighth Amendment unless an official acts with a "culpable state

of mind in inflicting that harm"); *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) (quoting *Farmer*

*v. Brennan*, 511 U.S. 825, 834, (1994)) (noting that a prisoner seeking to show an Eighth

Amendment violation must typically demonstrate that the defendant acted with deliberate

indifference); *Santiago v. Ringle*, 734 F.3d at 591 (quoting *Comstock v. McCrary*, 273 F.3d 693,

702 (6th Cir. 2001)) ("'[W]hen a prison doctor provides treatment, albeit carelessly or

inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's

needs, but merely a degree of incompetence which does not rise to the level of a constitutional

violation.'"). Moreover, where a plaintiff receives medical attention, and his dispute is over the timing or adequacy of treatment, "the Court will not second-guess medical judgments or constitutionalize these state tort claims." *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 849 (N.D. Ohio March 12, 2007) (citation omitted).

Even if the Undersigned agreed that the nurse Defendants should have provided Plaintiff with a snack or meal sooner, it would not save Plaintiff's individual capacity claim. Here, Plaintiff provides insufficient factual content in his Complaint from which the Court could reasonably infer that these Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" or that they actually drew that inference and ignored the risk. *Blackmore*, 390 F.3d at 896 (finding that a defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . ignore[] that risk," to have a sufficiently culpable state of mind for a deliberate indifference claim). Plaintiff, therefore, fails to state a claim against Defendants Nurse Young and Nurse Tim Cowgill for deliberate indifference and dismissal of these claims is appropriate.

## III.

Plaintiff has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983. It is therefore **RECOMMENDED** that the Defendants' Motion to Dismiss (ECF No. 13) be **GRANTED**. It is **FURTHER RECOMMENDED** that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny Plaintiff leave to appeal in forma pauperis. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: January 7, 2020                    /s/ Elizabeth A. Preston Deavers_____
                                         **ELIZABETH A. PRESTON DEAVERS**
                                         **CHIEF UNITED STATES MAGISTRATE JUDGE**